CAMBRIAN SCIENCE CORPORATION,
Plaintiff,

v.

COX COMMUNICATIONS, INC.,
et al., Defendants.

Case No. SACV 11–01011 AG (JPRx).

United States District Court,
C.D. California.

Signed Jan. 6, 2015.

---

Joseph Pia, Brett I. Johnson, Pia Anderson Dorlus Reynad & Moss LLC, Salt Lake City, UT, Alan M. Kindred, Ivan. M. Posey, Leech Tishman Fuscaldo and Lampl LLP, Pasadena, CA, C. Dale Quisenberry, John T. Polasek, Polasek Quisenberry and Errington LLP, Bellaire, TX, for Plaintiff.

Michael A. Amon, Fish and Richardson PC, San Diego, CA, Audra A. Dial, Mitchell G. Stockwell, Kilpatrick Townsend and Stockton LLP, Atlanta, GA, Daniel H. Rylaarsdam, Kilpatrick Townsend and Stockton LLP, Beverly Hills, CA, David Wayne Long, Dow Lohnes PLLC, Joseph V. Colaianni, Jr., Linhong Zhang, Ruffin B. Cordell, Fish and Richardson PC, Washington, DC, Olga I. May, Roger A. Denning, Michael M. Rosen, Fish and Richardson PC, San Diego, CA, for Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR ATTORNEYS' FEES, DKT. NO. 379; GRANTING DEFENDANT COX COMMUNICATIONS, INC.'S MOTION FOR ATTORNEYS' FEES, DKT. NO. 377.

ANDREW J. GUILFORD, District Judge.

### INTRODUCTION

This case involves motions for attorney fees under 35 U.S.C. § 285 in a difficult case. Defendants Cox Communications, Inc. ("Cox"); XO Communications Services, LLC; Global Crossing Telecommunications, Inc.; Level 3 Communications LLC; 360networks (USA), Inc.; Electric Lightwave, LLC, dba Integra Telecom; IXC Holdings, Inc. dba Telekenex (collectively, "Customer Defendants"); and Infinera Corporation ("Infinera") (collectively, "Defendants") have filed a Motion for Attorneys' Fees ("Defendants' Motion"), seeking an award of the attorney fees paid to defend the case at least since the June 17, 2013 claim construction order. (Dkt. No. 238.) Cox filed a separate Motion for Attorneys' Fees ("Cox Motion") the same day, seeking the attorney fees Cox separately paid for the whole case.

The Defendants' Motion is GRANTED IN PART and DENIED IN PART. The Cox Motion is GRANTED.

### BACKGROUND

In 2008, Plaintiff Cambrian Science Corporation's ("Cambrian") predecessor-in-interest contacted Defendant Infinera, the manufacturer of the accused products, regarding U.S. Patent No. 6,775,312 ("'312 Patent"), and threatened to bring an action for infringement. (Defs.' Mot., Dkt. No. 379–1 at 3–4.) On July 7, 2011, Cambrian filed its Complaint against the Customer Defendants, alleging direct infringement of the '312 Patent. (Compl., Dkt. No. 1.) On August 24, 2011, Cambrian filed its First Amended Complaint, adding Infinera as a defendant. (First Am. Compl., Dkt. No. 29.) The Court issued a claim construction order on June 17, 2013, 2013 WL 4647303. (Dkt. No. 238.) Fact discovery closed on November 22, 2013. (Dkt. No. 251.) Defendants filed a motion for summary judgment on April 24, 2014. (Dkt. No. 301.) The Court granted that motion on June 13, 2014, and entered final judgment in favor of Defendants on July 2, 2014. (Dkt. Nos. 370, 374.)

### LEGAL STANDARD

The Patent Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. In this statute, "exceptional" has its ordinary meaning of "'uncommon,' 'rare,' or 'not ordinary.'" *Octane Fitness, LLC v. ICON Health & Fitness, Inc.,* —— U.S. ——, 134 S.Ct. 1749, 1756, 188 L.Ed.2d 816 (2014). Thus, "an 'exceptional' case is simply one that stands out from others with respect to the

substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* Section 285 discourages certain "exceptional" conduct by imposing the cost of bad decisions on the decision maker.

 District courts determine whether a case is exceptional "considering the totality of the circumstances." *Id.* Fees may be awarded where "a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless" exceptional. *Id.* at 1757. "A case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id.* A party must prove its entitlement to fees by a preponderance of the evidence. *Id.* at 1758.

In the companion case to *Octane Fitness,* the Supreme Court held that "[b]ecause § 285 commits the determination whether a case is 'exceptional' to the discretion of the district court, that decision is to be reviewed on appeal for abuse of discretion." *Highmark Inc. v. Allcare. Health Mgmt. Sys.,* — U.S. —, 134 S.Ct. 1744, 1748, 188 L.Ed.2d 829 (2014). The abuse-of-discretion standard applies to "all aspects of a district court's § 285 determination." *Id.* at 1749.

Federal Rule of Civil Procedure Rule 54(d)(2)(C) provides that "[t]he court may decide issues of liability for fees before receiving submissions on the value of services."

## ANALYSIS

### 1. DEFENDANTS' MOTION

#### 1.1 Substantive Strength of Cambrian's Litigating Position

##### 1.1.1 Infringement Claim Against Generation 2 Devices

Defendants argue that Cambrian's infringement claim against the Generation 2

photonic integrated circuits was unusually meritless since the beginning of the case, and even more so after the June 17, 2013 claim construction order. (Defs.' Mot., Dkt. No. 379–1 at 1–2.) Cambrian responds that its litigating position was not unreasonable even after the claim construction order. (Pl.'s Opp'n, Dkt. No. 388 at 6.)

 To rule on Defendants' motion for summary judgment, the Court had to decide several issues that were not fully resolved during claim construction, either because they were not squarely presented at that time or because they were factual in nature. Among these were whether the '312 Patent disavowed active-to-passive transitions within a photonic integrated circuit and whether the use of a separate arrayed waveguide grating and semiconductor optical amplifier on the same chip met the Court's construction of an "active waveguide coupler." (Order Granting Defs.' Mot. for Summ. J., Dkt. No. 370 at 38–43.) Although both of these issues were ultimately resolved in Defendants' favor, Cambrian's positions on these questions were not exceptionally meritless.

Cambrian's "black box" theory at least plausibly satisfied the asserted claims by identifying a passive arrayed waveguide grating and an active semiconductor optical amplifier as subcomponents of an "active waveguide coupler." Because the semiconductor optical amplifier is active under the Court's construction, it was not exceptionally unreasonable to argue that the two components together could make up an "active waveguide coupler," since such a combination was not specifically addressed by the Court's claim construction.

Merely losing at summary judgment is not a basis for an exceptional case finding.

If so, every party prevailing on summary judgment would be entitled to attorney fees—a result inconsistent with the Supreme Court's holding that an exceptional case "stands out from others," *see Octane Fitness,* 134 S.Ct. at 1756, and one that would have negative implications for access to justice. Cambrian articulated a detailed infringement theory regarding the Generation 2 photonic integrated circuit (the "black box" theory) and supported it with expert testimony addressing how the use of an arrayed waveguide grating with a semiconductor optical amplifier in the accused device could meet the limitations of the asserted claims. (Pl.'s Opp'n to Defs.' Mot. for Summ. J., Dkt. No. 339 at 6–7.) Regarding the patentee's disavowal of active-to-passive transitions, the Court found that Cambrian's argument was incorrect. (Order Granting Defs.' Mot. for Summ. J., Dkt. No. 370 at 38–41.)

Cambrian's arguments on these issues, while unpersuasive, were not so meritless as to "stand out from others" commonly encountered in patent cases. Thus, Cambrian's litigating position for the Generation 2 device was not exceptional.

### 1.1.2 Infringement Claim Against Generation 1 and 3 Devices

A different analysis applies to the Generation 1 and 3 photonic integrated circuits. Unlike the Generation 2 devices, the Generation 1 and 3 devices do not have semiconductor optical amplifiers, and instead achieve power flattening using variable optical attenuators only. (Def.'s Mot., Dkt. No. 379–1 at 3.) During claim construction, Cambrian sought a broad construction of "active" which would have provided a plausible argument that a variable optical attenuator combined with an arrayed waveguide grating was an "active waveguide coupler." (Joint Claim Constr. and Prehearing Statement, App. B, Dkt. No. 98–6 at 9–10.) Cambrian's proposed

construction of "active region" was "[a] region of an optical device or photonic integrated circuit that may provide loss, gain and/or refractive index change to light propagating through that region. The loss, gain, or refractive index change may be controlled by an external input, such as current, voltage or temperature." (*Id.* at 10.)

Therefore, the loss imparted by a variable optical attenuator could have satisfied the claim limitation under that construction. But the Court's construction was narrower, requiring that "the absorption of an optical signal can be changed to gain by application of pumping." Under this construction, neither a variable optical attenuator nor a passive arrayed waveguide grating is an "active region."

 After claim construction, Cambrian could have moved for leave to amend its infringement contentions, either to include some as-yet unarticulated theory under which the Generation 1 and 3 devices infringed, or to remove the Generation 1 and 3 devices from its infringement contentions entirely. At the very latest, Cambrian had an opportunity to articulate a Generation 1 and 3 infringement theory in opposition to Defendants' summary judgment motion. Cambrian did neither, and simply continued to assert infringement by both devices with no theory of how they met the limitations of the asserted patent claims under the Court's construction. (Pl.'s Opp'n to Defs.' Mot. for Summ. J., Dkt. No. 339.)

Cambrian's experts never offered infringement opinions for Generation 1 or Generation 3 devices. (Pl.'s Opening Expert Report, Dkt. No. 301, Ex. E at ¶ 112; Dutta Dep. Tr., Dkt. No. 301, Ex. B at 72:1–4.) Instead, they stated only that they had no opportunity to test the devices to develop an opinion on infringement. Cambrian did not even attempt to produce evidence that the Generation 1 or 3 devices

infringed the '312 Patent as construed. The only infringement theory Cambrian asserted in the case after claim construction required a semiconductor optical amplifier. But no semiconductor optical amplifier or similar amplifying component is present near the arrayed waveguide grating in the Generation 1 or 3 devices, as it is for the Generation 2 devices.

Thus, Cambrian could not even offer for Generation 1 and 3 the "black box" theory it offered for the Generation 2 devices. Because Cambrian never articulated an infringement theory against the Generation 1 and 3 devices, and because Cambrian's only infringement theory as to the Generation 2 device could not reasonably be applied to the Generation 1 and 3 devices, Cambrian's claims that the Generation 1 and 3 devices infringed the '312 Patent were exceptionally lacking in substantive strength after the Court's claim construction.

## 1.2 Cambrian's Manner of Litigating

Defendants argue that Cambrian litigated the case in an unreasonable manner to delay resolution and increase Defendants' legal expenses. (Defs.' Mot., Dkt. No. 379–1 at 19:16–19.) Specifically, Defendants argue that Cambrian received samples of Generation 1 and 2 photonic integrated circuits in June 2012 but "never bothered to test the samples." (*Id.* at 19:20–24.) Cambrian further filed "additional requests for untimely discovery" and "serial motions demanding destructive testing" related to the Generation 3 device. (*Id.* at 19:25–28.) Defendants also argue that Cambrian litigated unreasonably by attempting to untimely assert claim 36 of the '312 Patent. (*Id.* at 20:5–10.) Finally, Defendants argue that Cambrian was unreasonable in refusing to dismiss its claims against the Customer Defendants for the duration of the case. (*Id.* at 20:11–26.)

Cambrian's failure to test the Generation 1 and 2 samples certainly casts Cambrian's requesting those samples in a poor light. It is difficult to definitively characterize Cambrian's requests and motions to compel production of the Generation 3 devices because issues about the feasibility of production and testing were never definitively resolved, largely due to Cambrian's delay. Cambrian did untimely assert claim 36, but the Court quickly provided the appropriate remedy by granting Defendants' motion to strike. (Dkt. No. 286.) And as discussed in Section 2.2, Cambrian's refusal to dismiss its claims against the Customer Defendants despite its focus on Infinera during discovery does not itself make the case exceptional.

Defendants have not shown that, overall, Cambrian's litigation conduct is an independently sufficient ground for finding the case exceptional as to all Defendants.

## 1.3 Defendants' Motion—Conclusion

Cambrian's infringement claims for the accused Generation 1 and 3 photonic integrated circuits were exceptionally weak after the June 17, 2013 claim construction order. Cambrian's infringement claim for the Generation 2 photonic integrated circuit was not. Defendants are entitled to recover reasonable attorneys' fees paid since June 17, 2013 to defend against Cambrian's Generation 1 and 3 infringement claims only. The Generation 2 portion of the case was not exceptional, and Defendants therefore are not entitled to the attorneys' fees they paid to defend against the Generation 2 infringement claim. To be clear, the only fees allowed are those Defendants would not have incurred but for Cambrian's continued inclusion of the Generation 1 and 3 products in the case after June 17, 2013.

## 2. COX MOTION

### 2.1 Substantive Strength of Cambrian's Litigating Position

The portion of the Cox Motion addressing the strength of Cambrian's litigating position relies on little more than the fact that Defendants prevailed on summary judgment. (Cox Mot., Dkt. No. 377 at 7–8.) Thus, the Court does not find that the substantive strength of Cambrian's litigating position against Cox was exceptional beyond the conclusions reached in Section 1.1.

### 2.2 Cambrian's Manner of Litigating

Cox argues that Cambrian litigated this case in an exceptionally improper manner against it by refusing to dismiss Cox and the other Customer Defendants, requesting overly broad discovery, and committing other discovery abuses, including serial meritless motions to compel and uncooperative behavior. (Cox Mot., Dkt. No. 377 at 2.)

The bare fact that Cambrian refused to dismiss its claims against Cox and the other Customer Defendants for the duration of the case is not itself exceptional. Given the course of the litigation, Cambrian's choice to initially file this lawsuit against only the Customer Defendants, despite its predecessor-in-interest having previously negotiated with Infinera about the same patent, is suspicious. Perhaps that strategy was directed to extracting settlements from parties without the means or motivation to defend against weak claims, or perhaps to pressure Infinera through harassing its customers. Such conduct must not be condoned. But Cox and the other Customer Defendants filed a motion to sever and stay all claims against them pending the outcome of Cambrian's claims against Infinera early in the case. (Defs.' Mot. to Sever and Stay Claims, Dkt. No. 73.) That motion was denied. (Order Den. Defs.' Mot. to Sever and Stay, Dkt. No. 85.) Cambrian will not be penalized for proceeding with the litigation in a manner consistent with the Court's ruling.

Further, Cambrian's focusing much of its litigation efforts on Defendant Infinera does not show that it was improper to also proceed against the Customer Defendants. Out of all defendants in this case, only Infinera manufactured the accused devices. The Customer Defendants purchased Digital Line Modules, where the accused devices were only a component, from Infinera. (Cox Mot. at 2; Order Granting Summ. J., Dkt. No. 370 at 11.) The Customer Defendants did not design or manufacture the accused devices, and thus had no technical information relevant to an infringement analysis other than what they had obtained from Infinera. (Defs.' Mot., Dkt. No. 379 at 12–13.) The focus on Infinera was therefore to be expected.

■ Unexpected, on the other hand, was Cambrian's behavior during discovery. Although the substance of the litigation focused almost entirely on Infinera, Cambrian requested discovery of broad categories of documents from Cox. (Cox Mot., Dkt. No. 377 at 4.) Cambrian's First Set of Requests for Production to Cox consisted of 72 requests, including "[a]ll Documents and things that identify Your former, current, and prospective Customers," "[a]ll Documents or things referring to or relating to Your Product(s)," "[a]ll Documents and things that identify any Person and/or Customer to whom You have offered to sell and/or license Your Product(s)," and "[a]ll Documents relating in any way to the architecture, structure, operating characteristics, functionality, use and/or operation of Your Product(s)." (Pl.'s First Set of Requests for Produc. of Docs. and

Things to Def. Cox, Dkt. No. 110–1 at 25–26.)

Document requests concerning Cox's customers were especially burdensome for Cox because unlike the other Defendants, Cox's customers include several million individual consumers. (Cox Mot. at 11:2–6.) Further, Cambrian refused Cox's request for reasonable search terms to find responsive documents and filed a series of motions to compel discovery. (Cox Mot., Dkt. No. 379 at 4.) As required, Cox produced documents, responded to written discovery, and provided a witness for deposition. (*Id.*)

Cox argues that these copious discovery requests were unnecessary, as shown by Cambrian's failure to identify any of the evidence it obtained from Cox in its expert reports, summary judgment filings, or trial exhibit list, and Cambrian's failure to identify any Cox personnel on its trial witness list. (*Id.* at 3.) In its opposition, Cambrian notes that one document out of the 302 exhibits in the Joint Exhibit and Witness List is, in fact, a Cox document. (Pl.'s Opp'n, Dkt. No. 396 at 10; Joint Trial Ex. List and Witness List, Dkt. No. 364–1, entry no. 237.) But that list is a *joint* exhibit list, and *Defendants' counsel* included the document in question. (Cox's Reply, Dkt. No. 399 at 2, n. 1.)

And Cambrian never articulated an infringement or damages theory involving Cox's use of the accused devices. (Cox Mot., Dkt. No. 377 at 5.) After Cambrian produced its expert report on damages with no damages theory as to the Customer Defendants, Cox again asked Cambrian to dismiss it as a party, since it was then clear that Cambrian was not seriously seeking recovery from Cox. (*Id.*) Cambrian again refused to dismiss Cox without extracting a payment. (*Id.*) To request such broad and burdensome discovery without planning to use any of it at trial, without

even developing a pretrial damages theory as to Cox, suggests that Cambrian targeted Cox in this lawsuit and pursued discovery for the purpose of harassing Cox or Infinera into a settlement.

Cambrian's other tactics reinforce that view. Cambrian noticed the deposition of Cox's witness for "the July 4th holiday weekend" in 2012. (*Id.* at 4.) Cox notified Cambrian that the witness was unavailable, and offered alternate dates that were as early as July 18, 2012, twelve days after the initially requested date. (Cox Mot. Ex. 3, Dkt. 377–4 at 2.) At that time, more than seven months remained before the close of fact discovery. (*Id.*) Cambrian at first refused to move the deposition date. (*Id.* at 3.) It later acquiesced but demanded that Cox pay related airfare change fees. (*Id.* at 2.) Finally, Cambrian canceled the rescheduled deposition, citing alleged deficiencies in Cox's document production. (Cox Mot. Ex. 4, Dkt. 377–5 at 1.) Cambrian never re-noticed the deposition, although discovery remained open for another year and a half.

Cambrian dissembles about the details of this conduct. It states: "Cox also implies that Cambrian's former counsel noticed a deposition for the July 4th holiday. That is not accurate. In fact, the deposition was noticed for two days after, on July 6, which is not unreasonable or exceptional." (Pl.'s Opp'n, Dkt. No. 396 at 10.) But Cox's motion stated explicitly that the deposition was noticed for "the July 4th holiday weekend." (Cox Mot., Dkt. No. 377 at 4.) July 6, 2012 was a Saturday. Thus, Cox's statement that Cambrian noticed the deposition for "the July 4th holiday weekend" was completely accurate.

It is unusual to notice a deposition for a Saturday absent an exigency or for the convenience of the witness. It is even more unusual to notice a deposition for the Saturday immediately following the July

4th holiday—a holiday weekend and popular time for travel—when seven months of fact discovery still remain. Under these circumstances, Cambrian's unwillingness to cooperate with Cox to reschedule the deposition strongly suggests harassment and reinforces the conclusion that Cambrian litigated against Cox in an unreasonable manner.

The Court has already repeatedly recognized Cambrian's less-than-cooperative litigation behavior. Denying an early motion to compel, Magistrate Judge Nakazato stated that "[t]he failure of Plaintiff's *pro hac vice* counsel to prepare proper Rule 37–1 letters is particularly egregious here due to the large number of requests served upon each defendant." (Order Den. Pl.'s Mot. to Compel, Dkt. No. 119 at 2.) That order goes on: "Plaintiff's *pro hac vice* counsel are notified and warned that, if they are unable to determine what Local Rule 37 requires and continue to present defective discovery motions to the Court, their *pro hac vice* status may be revoked." (*Id.* at 3.)

Ruling on another one of Cambrian's later motions to compel, Magistrate Judge Rosenbluth stated that "Plaintiff has unnecessarily dragged out these discovery proceedings, both by filing serial motions concerning largely identical discovery disputes against the various customer defendants, despite the latter's suggestion that they all be handled in one joint consolidated motion (May Decl. Ex. D at 78), and by initially failing to agree to the Federal Circuit's discovery order (*id.*)." (Order Granting in Part and Den. in Part Pl.'s Mot. to Compel, Dkt. No. 174 at 2.)

Because of the importance of professionalism and civility, the Court has attached to its website the *Orange County Bar Association Standards for Professionalism and Civility Among Attorneys*, hoping that litigants would read the standards and abide by them. A review of the following standards in that attachment highlight the exceptionally improper conduct here.

II. Counsel should interact with adversaries in a professional and civil manner by:

A. Acting professionally towards other counsel at all times;

\* \* \*

E. Extending courtesies to opposing counsel, including reasonable requests for extensions of time, whenever possible without prejudicing the client's interests;

\* \* \*

III. Counsel should facilitate the civil and professional exchange of information through written discovery by:

\* \* \*

B. Never serving discovery for the purpose of harassing or generating expense for an adversary;

C. Making all efforts to tailor discovery to information or materials actually needed for trial preparation;

\* \* \*

IV. Counsel should act appropriately in depositions by:

\* \* \*

C. Making reasonable efforts to accommodate the schedules of both opposing counsel and the witness when scheduling depositions;

\* \* \*

X. Counsel should always foster a positive public perception of the legal community by:

\* \* \*

B. Never knowingly making untrue statements of fact or law. . . .

To be clear, *Octane Fitness* is not a vehicle to revisit discovery orders or a second bite at imposing sanctions that could have been properly imposed for vio-

lation of a party's discovery obligations. The Court here discusses the prior discovery rulings because they are part of the totality of the circumstances of Cambrian's manner of litigating this case.

Although litigation tactics are getting increasingly harsh, the Court will not condone the exceptionally improper conduct here. Cambrian's litigation tactics are " 'uncommon,' 'rare,' [and] 'not ordinary' " in this Court. *Octane Fitness*, 134 S.Ct. at 1756. Cambrian's litigation behavior renders its case against Cox exceptional under 35 U.S.C. § 285. Cox is therefore entitled to a reasonable award of fees for its defense of the entire case.

### DISPOSITION

The Court GRANTS IN PART and DENIES IN PART Defendants' Motion for Attorneys' Fees. The Court GRANTS Cox's separate Motion for Attorneys' Fees. Defendants are directed to submit a complete justification for the fees they seek, including justification for the rates charged and the time spent, organized to facilitate the Court's review and adjustment of the requested fees. Fees shall be presented organized both by date and by timekeeper. Defendants shall provide the Court and Cambrian with native Excel versions of the spreadsheets they submit.

Defendants shall file all they deem necessary to support their fees no later than January 26, 2015. Plaintiff shall file its objections to Defendants' accountings no later than February 9, 2015. Defendants shall file their responses to the objections no later than March 2, 2015. The Court will notify the parties if it requires a hearing on the amount of fees.

IT IS SO ORDERED.